## Appeal of BERNUTH LEMBCKE COM-      Docket No. 849. PANY, INC.

1. Upon the evidence it is *held* that salaries accrued upon the taxpayer's books of account for the years 1917 and 1918, but actually paid during the years 1919 and 1920, are not legal deductions from gross income in income-tax returns for the years 1919 and 1920.

2. The taxpayer purchased 110,000 pounds sterling at $3.86¼ per pound and used the pounds sterling in the purchase of merchandise in England at a time when the value of the pound sterling was $3.50. *Held*, that the taxpayer sustained a loss of $39,875 in the year 1920 from its transaction in the purchase and disposition of 110,000 pounds sterling.

Submitted March 24, 1925; decided April 27, 1925.

*F. Juchhoff, C. P. A.,* for the taxpayer.

*George K. Bowden, Esq.,* for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This appeal is from a deficiency in income and profits taxes for the years 1919 and 1920 in the amounts of $22,271.13 and $27,556.59, respectively, against which there is to be applied an overassessment for the year 1918 in the amount of $644.59.

From the oral and documentary evidence introduced the Board makes the following

### FINDINGS OF FACT.

The taxpayer is engaged in the business of importing and selling certain oils, principally creosote oil. The business slowed down in 1914, 1915, and 1916. It was importing at that time creosote oil from Germany and England, which it sold to the railroads of the United States for their ties. In 1917, when the United States entered the World War, the business stopped entirely. During the period of the war the taxpayer transacted no business whatever. It had large contracts in Europe and large contracts in the United States, but it had no oil to deliver against them. The following is taken from the minute book of meetings of the board of directors of the corporation:

Minutes of a meeting of the Board of Directors held at the office of the company 171 Madison Avenue, City of New York, July 1. Present, all directors.

The president states that owing to war conditions at the request of the directors, the president and secretary-treasurer agree for the reasons stated that their salaries from July 1, 1917, for the balance of the year, that is, until December 31, 1917, shall not be paid to them in regular monthly installments as heretofore, but only at such future time when in the judgment of the directors such payments can be made. The amount of money due for the salaries to the officers is to be placed temporarily into a separate account, from which later

at the direction of the directors and with the consent of the stockholders the payment of back salaries to the officers of the company is to be made.

Upon motion the meeting adjourned.·

Minutes of a meeting of the Board of Directors of the Lembcke-Von Bernuth Company held at the office of the Company at 171 Madison Avenue, Manhattan, City of New York, State of New York, January 2, 1918.

Present, all directors.

The president states that in view of the fact that war conditions still exist it is extremely unlikely that for the coming year the business of the company be resumed.

At the request of the Directors the president and the secretary-treasurer agreed for the time being that their salaries from January 1, 1918, for the balance of the year, until December 31, 1918, were not to be paid to them in regular monthly installments as heretofore, but only at some future time, when in the judgment of the directors certain payment can be made. The amount of money due for salaries to the officers is to be placed temporarily in a separate account from which later at the direction of the directors and with the consent of the stockholders the payment of back salary to the officers is to be made.

In 1919 the business started up again. The officers of the corporation went to Europe and made new contracts, and also made new contracts with purchasers in the United States. The business showed a fair profit for 1919, and regular salaries were paid. A part of the deferred salaries for 1917 and 1918 was paid in 1919, and the balance in 1920. The books of account of the taxpayer on December 31, 1918, showed deferred salaries for the officers as a liability against the assets. When additional amounts were paid as salaries during 1919 and 1920, the payments were charged against the deferred salary account. In its income and profits tax returns for 1919 and 1920 the taxpayer has claimed the deduction from gross income of the deferred salaries actually paid to the officers of the corporation, and has also claimed the inclusion in invested capital of an amount of assets equal to the credits in the deferred salary account.

In January or July, 1920, the pound sterling was worth $3.86¼. While it was selling at that price the taxpayer entered into a contract with the Equitable Trust Co. of New York for the purchase of 200,000 pounds sterling at $3.86¼. Exchange to the amount of 90,000 pounds was soon purchased. By the time the taxpayer had purchased merchandise abroad to the extent of 110,000 pounds sterling the price of the pound sterling had dropped to $3.50. In December, 1920, the taxpayer purchased from a British concern 1,821,468 imperial gallons of creosote oil in bulk 100° F. at 1s. 3d. per gallon. In December, 1920, the taxpayer borrowed from the Bankers Trust Co. $385,000 to liquidate in part its liability of $424,875 to the Equitable Trust Co. of New York on 110,000 pounds sterling at $3.86¼. On December 29, 1920, the Bankers Trust Co. addressed the following letter to the taxpayer:

BANKERS TRUST COMPANY,
ASTOR BUILDING,
*5th Ave. & 42nd Street, New York, Dec. 29th, 1920.*

BERNUTH LEMBCKE CO. INC.
*171 Madison Avenue, New York City.*

GENTLEMEN: Under date of Dec. 28th we received from the Equitable Trust Company of New York £110,000, check on London, for your account. We have cabled these funds to the London City and Midland Bank, Ltd. opening a special sterling deposit account.

These funds are held at your disposal in our account with the London Joint City and Midland Bank, Ltd., and subject to your order through us and we hold ourselves ready to sell or transfer the amount so held, either in part or in whole, subject to your demand and such authority as may be within our power when the demand is made, but it is understood and agreed that in case a moratorium or any other legal or governmental obstacle prevents the transfer or in case the funds or deposit are confiscated or otherwise lost by reason of revolutions or other causes beyond our or our correspondent's control, we will not be responsible for our inability or that of our correspondent to carry out your or our instructions, nor liable for the repayment of said funds or deposit but such loss shall be borne by you.

Interest on this account will be allowed at the rate of 4–1/2%. Please confirm to us.

Yours very truly,

(Sgd)      C. WILLMURT,
A. C.
*Foreign Department.*

The oil had to be paid for at the time of the loading. The loading was completed on December 31, 1920. The taxpayer had contracted to sell the oil during 1920. The sales book of the taxpayer shows the creosote oil as having been sold during the year 1921. In making its income-tax return for the year 1920 the taxpayer included in its inventory the creosote oil which was loaded on board the steamer at a port in England during the last few days of 1920 and delivered in the United States after January 1, 1921.

The taxpayer kept its books of account on an accrual basis.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision of the Board will be entered upon consent or on seven days' notice in accordance with Rule 50.

### OPINION.

SMITH: This appeal presents for determination the following questions: (1) Whether the taxpayer, which accrued on its books of account salaries of its officers for a part of the year 1917 and for the entire year 1918, is entitled to deduct from the gross income of the years 1919 and 1920 the amounts of the deferred salaries paid during those years; and (2) whether the taxpayer had a deductible loss during the year 1920 in respect of the purchase and disposition of 110,000 pounds sterling at the contract price when the price of sterling at the actual date of purchase was less than at the date of the contract?

At the hearing of this appeal the representative of the Commissioner moved to dismiss the petition on the ground that the taxpayer had been negligent in the prosecution of its appeal and had obtained numerous continuances. At the time the motion was made the president of the taxpayer corporation was present and ready to take the stand and submit relevant testimony on the points in issue. The motion for dismissal is denied.

With respect to the deduction in 1919 and 1920 of deferred salaries to officers, it appears that the taxpayer kept its books of account on an accrual basis. Regular salaries were accrued in favor of the officers from July 1, 1917, to December 31, 1918. The taxpayer's

books of account do not show the payment of the deferred salaries as an expense of the years 1919 and 1920. Under the Revenue Act of 1918 a corporation is required to account for income upon the basis upon which its books of account are kept, unless it appears that such basis does not truly reflect the income. No evidence has been introduced to show that the books of account as kept for the years 1919 and 1920 do not truly reflect the income. The action of the Commissioner in disallowing the deduction of the deferred salaries paid in 1919 and 1920 must therefore be approved.

The facts with respect to the deduction of $39,875 alleged loss on the purchase of foreign exchange are simply that the taxpayer contracted to purchase, during the early part of the year 1920, 110,000 pounds sterling at $3.86¼ per pound. The contract price was paid in December, 1920, at a time when the pound sterling had a value of only $3.50. At the same time the taxpayer used the foreign exchange thus acquired in the purchase of creosote oil in England. The taxpayer paid $39,875 more for the exchange than it would have been required to pay had it purchased it at the time that it made payment for the creosote oil. The Commissioner has disallowed the deduction of the $39,875 alleged loss. We think that he was in error in so doing. The cost of the creosote oil carried into the inventory at the close of the calendar year 1920 was not the amount that was paid for the exchange to carry out the contract made by the taxpayer with the Equitable Trust Company of New York, but $39,875 less than the amount paid for the exchange. The creosote oil could not be inventoried at December 31, 1920, at more than its actual cost and the cost was in terms of the exchange at the date of purchase. The contract for the purchase of the foreign exchange was entered into in the early part of 1920 and completed in the month of December, 1920, at a loss of $39,875. That loss is a legal deduction from the gross income of the taxpayer for the year 1920.